JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This is a consolidated appeal from the Cuyahoga County Court of Common Pleas. The state filed leave to appeal on June 6, 2006, challenging the sentence imposed by the court. The defendant, Gregory Ballard, filed a notice of appeal on June 15, 2006, challenging his finding of guilt. For the reasons that follow, we affirm Ballard's finding of guilt, but vacate his sentence and remand the case for resentencing.
 {¶ 2} On January 19, 2006, at approximately 7:20 p.m., Ashley Thorpe, Stacy Guzman, Solomon Williams, and Brian White were on the porch of 4515 Bridge Court in Cleveland with an infant and a toddler. They noticed a maroon car drive past slowly with two males inside, who were later identified as Ballard and the juvenile codefendant. After driving past the house twice, the car stopped in the alley behind the house. Thorpe and White went around the house to investigate. When Thorpe rounded the corner, she saw Ballard standing outside the car handling a gun. Ballard turned, pointed the gun at Thorpe, and racked it. Thorpe heard a loud "cha, cha" and then she and White ran. Thorpe called the police to report that she had almost been robbed at gunpoint. Thorpe gave a description of the car and the two males.
 {¶ 3} That same night, at approximately 8:10 p.m., Brian Torres was walking home from work when Ballard and the juvenile drove past in the juvenile's 1997 maroon Buick La Sabre. Torres testified that he watched the car turn around and *Page 4 
stop behind him. A masked man dressed all in black exited the car from the passenger seat, brandished a gun, and demanded that Torres give him whatever he had. The gunman took Torres' cell phone and then struck Torres in the face twice with his fist. The gunman fled in the car, and Torres went to a friend's house and called police. Torres described the car and the two males involved.
 {¶ 4} It was approximately 9:30 p.m. that same night, while patrolling the area, that Cleveland Police Officers Dymphna O'Neill and Michael Hageman located the maroon car with two males inside matching the descriptions of both suspects. The officers called for backup and initiated a traffic stop. The juvenile was driving and was removed from the car without incident. Ballard was in the passenger seat and was also removed from the car. Ballard was placed on the ground, handcuffed, and mirandized. In the meantime, Officer O'Neill noticed a gun, which was located on the floorboard of the passenger seat. In addition, a knit cap, money, and crack cocaine fell out of the car on the passenger's side.
 {¶ 5} Ballard stated, "The crack is mine, but the gun ain't. It ain't my gun." Ballard was searched, and three cell phones were found in the pocket of his pants. One of the cell phones belonged to Torres, one of the victims. Thorpe was taken to the scene where she identified Ballard during a "cold stand."
 {¶ 6} Ballard was charged with four counts of aggravated robbery with firearm specifications, one count of drug trafficking with a one-year firearm specification, one count of possession of drugs with a one-year firearm specification, one count of *Page 5 
carrying a concealed weapon, one count of having a weapon while under disability, and possession of criminal tools. Prior to trial, one count of aggravated robbery was dismissed by the state.
 {¶ 7} After a jury trial, Ballard was convicted of two counts of aggravated robbery with one-and three-year firearm specifications, one count of possession of drugs with a one-year firearm specification, one count of carrying a concealed weapon, and one count of possession of criminal tools. The trial court found Ballard guilty of having a weapon while under disability. Ballard was sentenced to a total of eight years. The trial court merged all of the firearm specifications. The state appeals Ballard's sentence, and Ballard appeals his finding of guilt.
 {¶ 8} Ballard asserts one assignment of error for our review, which states the following:
 {¶ 9} "The trial court erred when it did not, sua sponte, exclude the defendant-appellant's post-Miranda statement from the evidence at trial."
 {¶ 10} Ballard argues that he did not fully appreciate hisMiranda warnings when he made the statement, "The crack is mine, but the gun ain't. It ain't my gun." Ballard asserts that it was plain error for the trial court to allow that statement into evidence. Finally, Ballard argues that his counsel was ineffective because he failed to file a motion to suppress this post-Miranda statement.
 {¶ 11} "An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Stojetz, *Page 6 84 Ohio St.3d 452, 455, 1999-Ohio-464. The decision to correct a plain error is discretionary and should be made with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 12} The United States Supreme Court made it clear that a defendant's voluntary comments and confessions are not covered by theMiranda ruling:
 "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Arizona v. Miranda (1966), 384 U.S. 436, 478, 16 L.Ed.2d 694, 726. Accord Rhode Island v. Innis (1980), 446 U.S. 291, 299-300; 64 L.Ed.2d at 307.
 {¶ 13} In Rhode Island v. Innis (1980), 446 U.S. 291, 301, the Supreme Court defined the term "interrogation" for purposes of Miranda as including not only express questioning, "* * * but also * * * any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v.Dailey (1990), 53 Ohio St.3d 88, at paragraph two of the syllabus. Ballard argues that when Officer O'Neill saw the gun, the *Page 7 
atmosphere quickly changed and transformed into severe, coercive, police action. He argues that he was under extreme duress when he made the statement, and therefore he did not knowingly, intelligently, and voluntarily waive his Miranda rights.
 {¶ 14} We find Ballard's arguments are without merit. First, Ballard was not being interrogated by the police when he made his spontaneous statement. State v. Becherer (Feb. 14, 2000), Warren App. No. CA99-07-085, (voluntary, spontaneous statements made without police coercion or inducement do not fall within the protection ofMiranda even if the defendant was under arrest and in custody). Second, Ballard was not coerced by the police into making the statement; rather, his statement was made voluntarily in an attempt to minimize his guilt. Finally, it was not error for the trial court to allow the statement into evidence because it was not made in violation of Ballard'sMiranda rights.
 {¶ 15} Since we have found that Ballard's statement was properly admitted into evidence, Ballard's argument that his attorney was ineffective for not filing a motion to suppress is also without merit. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, at paragraph three of the syllabus. Accordingly, Ballard's sole assignment of error is overruled. *Page 8 
 {¶ 16} The state asserts one assignment of error for our review, which states the following:
 {¶ 17} "The trial court erred in merging the three firearm specifications of the two aggravated robberies and the one possession of drugs counts, as the three crimes were separate and distinct acts and, as the incidents involving the firearm were not part of the same act or transaction, R.C. 2929.14(E)(1) mandates that the mandatory firearm penalties be served consecutively to each other and the underlying offenses."
 {¶ 18} R.C. 2929.14(E)(1) requires that firearm specifications run prior to and consecutive to the underlying offense. Its predecessor statute R.C. 2929.71 was interpreted in State v. Wills,69 Ohio St.3d 690, 691, 1994-Ohio-417. When addressing the language of the statute, the court explained:
 "When it [the General Assembly] enacted R.C. 2929.71 [now R.C. 2929.14], the General Assembly intended to separately punish each criminal transaction committed with the assistance of firearms. Each separate criminal transaction performed with the assistance of a firearm is punishable by a mandatory three-year sentence. The language in R.C. 2929.71(B) [now R.C. 2929.14(D)(1)(b)[1] instructs the courts on how to treat those cases where multiple offenses are committed with the assistance of a firearm by the same defendant. The statute states that separate mandatory sentences are appropriate unless the separate punishable criminal offenses were part of the same transaction or act." Id. at 691.
 {¶ 19} "Transaction" is defined as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v. Wills, *Page 9 
supra. In Wills, the court found that the armed robberies of two victims walking in close proximity to each other and robbed within minutes of each other, were separate transactions within the meaning of the firearm specification statute and supported separate mandatory sentences on each firearm specification.
 {¶ 20} In this case, Ballard took part in three separate acts or transactions. The first incident occurred at 7:20 p.m. at 4515 Bridge Court, when Ballard pointed the gun at Thorpe and racked it in an attempt to rob her. The next incident occurred at 8:10 p.m., near the intersection of West 49th Street and Gedeon Road. Ballard exited the car, approached Torres, brandished a gun, robbed Torres of his cell phone, punched him in the face twice, and left. Finally, the last act occurred at 9:30 p.m., when Ballard was stopped by police and arrested. Ballard was in possession of crack cocaine and a forty-caliber handgun. Pursuant to R.C. 2929.14(E)(1), the court should not have run the gun specifications concurrently but, rather, should have ordered them to be served consecutive to and prior to the underlying offenses. The state's sole assignment of error is sustained.
[1] R.C. 2929.14(D)(1)(b) provides the following: "A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section [governing sentencing on firearm specifications] for felonies committed as part of the same act or transaction."
Affirmed in part, sentence vacated and case remanded in part.
It is ordered that appellant and appellee share costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's *Page 10 
conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, PRESIDING JUDGE
 MELODY J. STEWART, J., and ANN DYKE, J., CONCUR *Page 1